# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5218 | **DATE** | 9/26/2003 |
| **CASE TITLE** | Horstman vs. County of DuPage, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due ____.

(3) ☐ Answer brief to motion due ____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendants' motions to dismiss (6-1, 7-1 and 13-1) are granted in part and denied in part. The motions to dismiss all counts against State's Attorney Devine, DuPage County, Det. DelGiudice, and Sheriff Zaruba are granted. As to the remaining defendants, the motions to dismiss Counts I, II, VI, VII, IX and XIV are denied. The motion to dismiss Count XI is denied s to Dep. Weiser, but granted as to the other defendants. The motions to dismiss counts III, IV, V, VIII, X, XII, XIII, XV, XVI and XVII are granted. Enter Memorandum Opinion and Order. Discovery is ordered closed on 1/31/04. Any dispositive motion will be due by 2/27/04. These dates will not be changed. Status hearing set for 3/5/04 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | SEP 2 9 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 37 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 9/26/2003 | |
| | | | date mailed notice | |
| MPJ | courtroom deputy's initials | | MPJ | |
| | | | mailing deputy initials | |

U.S. DISTRICT COURT

Date/time received in central Clerk's Office

**DOCKETED**

SEP **2 9** 2003

JOHN R. HORSTMAN,                            )
                                             )
                Plaintiff,                   )
                                             )
        v.                                   )   No.   02 C 5218
                                             )
COUNTY OF DUPAGE, a political subdivision    )
of the State of Illinois, JOHN ZARUBA,       )
Sheriff of DuPage County, Illinois,          )
JOE BIRKETT, State's Attorney of DuPage      )
County, Illinois, LIAM BRENNAN,              )
individually and in his capacity as          )
Assistant State's Attorney of DuPage         )
County, Illinois, DEPUTY T. WEISNER (Badge   )
#188), and DETECTIVE JOSEPH DELGIUDICE,      )
individually and as agents and employees     )
of the County of DuPage, and DICK DEVINE,    )
State's Attorney of Cook County, JOHN DOE    )
and all others not presently known,          )
                                             )
                Defendants.                  )

## MEMORANDUM OPINION AND ORDER

### I.

On July 24, 2001, plaintiff John R. Horstman was riding his bicycle on a public trail in DuPage County. As Mr. Horstman approached a bridge, a DuPage County Sheriff squad car pulled forward and blocked his path. Deputy Thomas Weiser asked Mr. Horstman where he was going and how long he had been on the trail. Mr. Horstman replied that he was heading home and that he had been on the trail for an hour and forty-five minutes. Deputy Weiser left the squad car, ordered Mr. Horstman to put his hands on the hood, and frisked Mr. Horstman. He discovered a magazine pouch on Mr.

Horstman's belt with two handgun magazines inside. He asked Mr. Horstman if he had a gun. Mr. Horstman replied, "I'm transporting my firearm in my backpack." Deputy Weiser informed Mr. Horstman that he was under arrest for unlawful use of weapons.

Deputy Weiser radioed for backup. As other officers arrived, they stripped Mr. Horstman of his backpack and other possessions, which included a combat knife, concealment holster, pepper spray, canteen, pocket knife, Firearm Owner's Identification Card ("F.O.I.D."), and assorted survival gear, as well as a zippered gun case holding an unloaded gun and ammunition in separate Velcro compartments. Mr. Horstman asked why he was being held, and Deputy Weiser replied, "You look like someone we're looking for." Mr. Horstman was subsequently presented in two "roll-up" lineups where he was made to stand facing a squad car some distance away. Mr. Horstman was then taken to the DuPage County Jail, strip-searched, and held. Later that day, Mr. Horstman signed a waiver of his Miranda rights and Detective Joseph DelGiudice interrogated him. Det. DelGiudice accused Mr. Horstman of carrying a concealed weapon. Mr. Horstman replied that he had complied with 720 ILCS 5/24-1(a)(4), which allows a holder of a currently valid F.O.I.D. to transport an encased, unloaded weapon. Detective DelGiudice then questioned Mr. Horstman about an incident of a man exposing himself to two ten-year-old girls on the trail. He asked Mr. Horstman why his name came up in the police department's computer database.

After more questioning Mr. Horstman chose to exercise his right to remain silent. He was permitted to telephone his family, who then contacted his lawyer. That night, Mr. Horstman was formally charged with aggravated unlawful use of a weapon under 720 ILCS 5/24-1.6(a)(2)(B), a felony. The complaint alleged that Mr. Horstman's gun was uncased.

The following morning, Mr. Horstman was brought before a judge in the Circuit Court of DuPage County. The prosecutor, Liam Brennan, told the judge that Mr. Horstman had exposed himself to two children and then chased them, requested that bail be set at $250,000, and further requested that Mr. Horstman be obliged to surrender all other weapons he owned and avoid unsupervised contact with minors. The judge set Mr. Horstman's bond at $250,000 and agreed to the terms suggested by the prosecutor. Mr. Horstman posted bond later in the day and was released.

On August 7, 2001, DuPage County State's Attorney Joe Birkett dropped the charges against Mr. Horstman and issued a press release explaining that he had done so because Mr. Horstman had complied with the law and there was no evidence on which to proceed with prosecution. Mr. Horstman subsequently filed this seventeen-count suit against the County of DuPage, John Zaruba, Sheriff of DuPage County, Liam Brennan, Assistant State's Attorney of DuPage County, Dep. Thomas Weiser, Sgt. Michael Tallone, and Det. Joseph DelGiudice (collectively, the "DuPage defendants"), and Dick

Devine, State's Attorney of Cook County. Count I is a claim against the DuPage defendants under 42 U.S.C. § 1983 for deprivation of Mr. Horstman's rights under the first, second, fourth, fifth, eighth, and fourteenth amendments. Count II is a claim against the DuPage defendants under § 1983 for conspiracy to violate Mr. Horstman's rights. Count III is an additional § 1983 claim against the DuPage defendants, alleging that Sheriff Zaruba promulgated policies and customs that resulted in the constitutional harm done to Mr. Horstman. Count IV is a similar claim against the DuPage defendants due to the policies allegedly promulgated by State's Attorney Birkett. In Count V, Mr. Horstman asks that this court declare unconstitutional the defendants' alleged "catch and release" policy of arresting and then freeing citizens who carry unloaded, encased firearms in compliance with 720 ILCS 5/24-1(a)(4) and seeks declaratory and permanent injunctive relief against Sheriff Zaruba, State's Attorney Birkett, and State's Attorney Devine to prevent further enforcement of the alleged policy. Counts VI through XIII charge the DuPage defendants with false arrest, malicious prosecution, intentional infliction of emotional distress, abuse of process, misuse of process, battery, defamation, and placing Mr. Horstman in a "false light in the public eye." Count XIV is a state-law conspiracy claim against the DuPage defendants. Count XV is a "*respondeat superior* claim," alleging that DuPage County is legally liable for the actions of the other DuPage defendants under

the *respondeat superior* doctrine. Count XVI alleges that DuPage County is liable for the actions of the other DuPage defendants under 745 ILCS 10/9-102, the Governmental Employees Tort Immunity Act. Finally, Count XVII seeks a declaratory judgment that Mr. Horstman has the right to carry an encased, unloaded firearm within Illinois.

## II.

The first order of business is consolidation of the unwieldy complaint. Counts III and IV are duplicative of Count I. All three state § 1983 claims against all DuPage defendants; Counts III and IV merely specify theories under which Mr. Horstman might choose to argue his claim. Count X is duplicative of Count IX; there is no difference between abuse of process and misuse of process. Similarly, Counts XV and XVI do not allege violations independent of those outlined in Counts VI through XIII; they only explain theories under which Mr. Horstman might pursue his argument. Therefore, Counts III, IV, X, XV, and XVI are dismissed.

## III.

Mr. Devine, State's Attorney of Cook County, moves to dismiss the claim against him for lack of subject matter jurisdiction, as Mr. Horstman has no standing to sue him. The only count that names Mr. Devine is Count V, which seeks declaratory judgment and an injunction barring Cook County from interfering with Mr. Horstman's right to bear arms in the future.

Mr. Devine correctly points out that this court has no jurisdiction to decide this claim. The federal courts are empowered to settle cases and controversies. U.S. CONST. art. III, § 2. One method of distinguishing between a justiciable case or controversy and a matter outside the jurisdiction of the court is the doctrine that a plaintiff must have standing to sue. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A plaintiff seeking to invoke federal court jurisdiction must be able to show that he has suffered or will suffer an injury that is concrete, particularized, and actual or imminent, rather than conjectural or hypothetical. *Id.* Where, as here, the plaintiff seeks injunctive or declaratory relief from future government action, the controlling case is *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). In *Lyons*, the plaintiff was subjected to an unconstitutional chokehold when arrested by Los Angeles police and sued to enjoin police from using such chokeholds in the future. The court found that the plaintiff had no standing to pursue such an injunction because it was "no more than speculation to assert" that he would ever be arrested and illegally choked again. *Id.* at 108. Applying *Lyons* in *Robinson v. City of Chicago*, 868 F.2d 959, 966 (7th Cir. 1989), a similar case where plaintiffs sought to enjoin investigative detentions by Chicago police, the Seventh Circuit held that plaintiffs had no standing to pursue injunctive relief because they could not allege that it was reasonably likely that they would again be arrested and

detained. "Because the various plaintiffs' future conduct presumably will give the police no probable cause to arrest them, they cannot expect that they will encounter the police, or, if they did, that the police would again detain them." *Id*. Likewise, Mr. Horstman, who repeatedly describes himself as law-abiding, cannot allege that it is reasonably likely that he will again be arrested or searched, or if he is, that police will again misapply Illinois law and arrest him for carrying a firearm in a permissible manner. The cases he cites to support his claim that he has standing to pursue injunctive and declaratory relief are inapposite. The plaintiffs in those cases faced pending or otherwise imminent prosecution, not the hypothetical (and highly unlikely) future arrests Mr. Horstman fears. *See, e.g., Rowe v. Griffin*, 676 F.2d 524 (11th Cir. 1982) (affirming a district court's permanent injunction against prosecution of the plaintiff for murder when the plaintiff had been granted immunity; at the time of suit, the plaintiff had already been indicted and prosecution was underway). Mr. Horstman has no standing to pursue injunctive or declaratory relief against State's Attorney Devine, or any of the other defendants. The claim against Mr. Devine is dismissed for lack of subject matter jurisdiction. Counts V and XVII, which seek injunctive and declaratory relief, are also dismissed as to all defendants for lack of subject matter jurisdiction.

DuPage County moves to dismiss the claims against it on the ground that it may not be held liable for the actions of its sheriff, its sheriff's deputies, or its state's attorney. Mr. Horstman offers a number of theories under which I might find the county liable, including a *Monell* theory, *respondeat superior* doctrine, and 745 ILCS 10/9-102, the Governmental Employees Tort Immunity Act. None of these theories renders DuPage County liable for the alleged injury to Mr. Horstman.

Mr. Horstman argues first that DuPage County is liable under *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). *Monell* held that in order to establish a § 1983 claim against a municipal body, a plaintiff must establish that his rights were violated as a result of the body's official policy, practice, or custom. *Id.* at 694. Mr. Horstman alleges that his injuries came about because the sheriff and state's attorney followed a policy of harassing and arresting law-abiding gun owners. However, even if true, this would not render the county liable. While a sheriff is a county officer, a "county is given no authority to control the office of the sheriff," and the Illinois Supreme Court has ruled that the status of sheriffs in relation to their counties is analogous to that of an independent contractor. *Moy v. County of Cook*, 640 N.E.2d 926, 929 (Ill. 1994). The Seventh Circuit has explicitly ruled that Illinois counties are not liable for their

sheriffs' actions under *Monell*, stating that "Illinois sheriffs are independently elected officials not subject to the control of the county." *Ryan v. County of DuPage*, 45 F.3d 1090, 1092 (7th Cir. 1995); *see also Thompson v. Duke*, 882 F.2d 1180, 1187 (7th Cir. 1989) (finding no *Monell* liability). Similarly, Illinois state's attorneys are independently elected, ILL. CONST. art. 6, § 19, and are "state, rather than county, officials." *Ingemunson v. Hedges*, 549 N.E.2d 1269, 1272 (Ill. 1990).

To counter these cases, Mr. Horstman relies heavily on *Cruz v. County of DuPage*, No. 96 C 7170, 1997 U.S. Dist. LEXIS 14397 (N.D. Ill. Sep. 17, 1997) (Coar, J.). The *Cruz* plaintiff argued that DuPage County was liable for the acts of its sheriff under *Monell* because the sheriff was the final policy-maker for the county. The court agreed, writing that *Ryan* and *Thompson* were effectively overruled by the Supreme Court's decision in *McMillian v. Monroe County, Ala.*, 520 U.S. 781 (1997). *McMillian* held that county sheriffs in Alabama are final law enforcement policy-makers for the state, not the county they serve, and thus that Alabama counties are not liable under *Monell* for the acts of their sheriffs related to law enforcement. *Id.* at 784. However, the court stated that this result could be expected to vary from state to state, and would be dependent on an analysis of state law, including the state's constitution, its statutes, its history, and its practices. *Id.* at 795. Judge Coar, in *Cruz*, analyzed Illinois law as the *McMillian*

9

court analyzed Alabama law and concluded that Illinois sheriffs do make policy for their counties, and that Illinois counties are thus liable under *Monell* for their sheriff's actions.

With due respect to Judge Coar, I do not believe *McMillian* wiped away the Seventh Circuit's holdings in *Thompson* and *Ryan* so cleanly. In *Thompson*, the Seventh Circuit engaged in just the kind of state-law analysis used by the *McMillian* court, albeit in an abbreviated fashion. The opinion cites to the Illinois Constitution, a statute, and cases to justify its finding that Cook County was not liable for its sheriff's actions. Had the case been decided after *McMillian*, that analysis might have been longer, but I see no reason to assume that its outcome would have changed. Furthermore, the *McMillian* court placed great emphasis upon the Alabama Supreme Court's interpretation of its own constitution, *id.* at 788, and I am unable to reconcile *Cruz* with the Illinois Supreme Court's decision in *Moy* stressing a county board's lack of control over its sheriff and refusing to hold it vicariously liable for the sheriff's actions. Thus, any policies promulgated by either the sheriff or the state's attorney and complained of by Mr. Horstman are not attributable to DuPage County, and the county is not liable for his alleged injuries under *Monell*.

Mr. Horstman's *respondeat superior* theory cannot save the claims against DuPage County. The central holding of *Monell* is that municipalities cannot be liable for the actions of their employees

under a *respondeat superior* theory, and that plaintiffs must instead pursue claims against municipalities under the alternative theory that the injury flowed from the decisions or policies of the municipality *itself*. As discussed in the previous paragraphs, DuPage County is not liable under *Monell*, and it cannot be liable under the doctrine of *respondeat superior*.

Finally, 745 ILCS 10/9-102, the Illinois statute cited by Mr. Horstman, does not offer an avenue for suit against the county. It provides only that a local public entity must pay "any tort judgment or settlement for compensatory damages ... for which it or an employee while acting within the scope of his employment is liable." *Id.* In other words, it does not bestow a right of action whereby a plaintiff may sue a municipality directly; rather, it makes the municipality an insurer for its employees. *Wilson v. City of Chicago*, 120 F.3d 681, 685 (7th Cir. 1997). As discussed above, the sheriff and state's attorney are elected state officials, answerable to the electorate, not the county; they are not employees of DuPage County, and the cited statute does not apply. *See Biggerstaff v. Moran*, 671 N.E.2d 781, 784 (Ill. App. Ct. 1996) ("Just as Cook County is not vicariously liable for the Cook County Sheriff's negligent acts ... Cook County is not vicariously liable for the Cook County State's Attorney's negligent acts.")

11

As there is no basis for holding DuPage County liable for the actions of the other DuPage defendants, its motion to dismiss the claims against it is granted.

V.

DuPage County State's Attorney Joe Birkett and his assistant Liam Brennan move to dismiss the claims against them on the grounds that as prosecutors, they are absolutely immune from suit under § 1983, or in the alternative, that qualified immunity shields them from liability. They also argue that the conspiracy claim should be dismissed because Mr. Horstman failed to plead that claim properly. Mr. Horstman disputes the immunity defense, asserting that Mr. Birkett and Mr. Brennan's actions took place outside the protected sphere of prosecutorial immunity. He also argues that the conspiracy claim is properly pleaded. I find that resolution of the immunity question requires a factual analysis not possible at this stage of the proceedings, and therefore deny the motion to dismiss the claims against Mr. Birkett and Mr. Brennan on immunity grounds. I further find that the conspiracy claim against them meets the liberal notice pleading standards of the Federal Rules of Civil Procedure.

The party asserting immunity bears the burden of establishing that his actions are protected. *Antoine v. Byers & Anderson, Inc.,* 508 U.S. 429, 432 (1993). The leading case defining the contours of absolute immunity for prosecutors from § 1983 claims is *Buckley v.*

*Fitzsimmons*, 509 U.S. 259 (1993). In *Buckley*, the court noted that prosecutors enjoy absolute immunity against suits stemming from any act "intimately associated with the judicial process" and "fairly within the prosecutor's function as an advocate," such as initiating and pursuing a criminal prosecution. *Id.* at 269-70 (internal quotations omitted). However, when prosecutors act outside their roles as advocates, such as when performing administrative and investigatory duties, absolute immunity does not apply. *Id.* at 273. The court stressed that "[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." *Id.*

Here, Mr. Horstman alleges that his arrest and arraignment were part of a long-term prosecutorial plot to illegally arrest and release law-abiding gun owners. He states that this plot began on or before December 6, 2000, when Mr. Birkett and Mr. Devine held a joint press conference addressing the enforcement of Illinois' gun laws.[1] In other words, Mr. Horstman is alleging actions on the part of Mr. Birkett and Mr. Brennan that took place long before his arrest. Accepting these allegations as true, *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002), I find

---

[1] Whether such statements were made at the alleged press conference or, if so, whether Mr. Horstman's arrest was related to the statements is, of course, not before me at this time. I will assume counsel is aware of his responsibilities under Rule 11, Fed. R. Civ. P.

13

that Mr. Birkett and Mr. Brennan have failed to establish that their actions were protected by prosecutorial immunity.

Mr. Birkett and Mr. Brennan correctly point out that Mr. Horstman presents no evidence to support the existence of the alleged plot, but at this time, he does not need to; he need only make a short, plain statement sufficient to notify the defendants as to the nature of the accusation. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). I cannot say that the prosecutors' acts were shielded by absolute immunity, or even qualified immunity, until it is clear what those acts were. *See Alvarado v. Litscher*, 267 F.3d 648, 651-52 (7th Cir. 2001) ("Because an immunity defense usually depends on the facts of the case, dismissal at the pleading stage is inappropriate."). The motion to dismiss all claims on the ground of prosecutorial immunity is denied.

Next, the prosecutors argue that common law public official immunity bars the state-law claims against them (Counts VI-XIV). However, the case they cite, *Aboufariss v. City of DeKalb*, 713 N.E.2d 804 (Ill. App. Ct. 1999), does not support dismissal of those claims. "To be protected, a public official's actions must fall within the scope of an official's authority and should not be the result of malicious motives." *Id.* at 812 (internal quotation omitted). In upholding an award of summary judgment in favor of the defendant prosecutors in *Aboufariss*, the court noted that "there is no evidence in the record to support plaintiff's argument" that the

14

defendants knowingly and recklessly acted to harm the plaintiff. *Id.* Mr. Horstman alleges that the prosecutors acted with the malicious motive of harassing law-abiding gun owners. If true, this allegation would bar an official immunity defense, but its truth has yet to be tested. The reasoning of *Aboufariss* is dependent on the existence of a factual record, and the case is thus inapplicable on a motion to dismiss where there is no record to evaluate. The motion to dismiss the state-law claims on the ground of common law official immunity is denied.

Finally, Mr. Birkett and Mr. Brennan argue that Mr. Horstman has failed to adequately plead his federal and state-law conspiracy claims (Counts II and XIV), pointing to *Kunik v. Racine County*, 946 F.2d 1574 (7th Cir. 1991) to support the proposition that conclusory allegations of conspiracy are not sufficient to withstand a motion to dismiss under Fed. R. Civ. P. 12(b)6. But *Kunik* was overruled by the Seventh Circuit in *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002), which held that *Kunik* "cannot be squared with" the Supreme Court's 2002 decision in *Swierkiewicz* and that "it is enough in pleading a conspiracy to indicate the parties, general purpose, and approximate date." *Id.*, 1007-8. This is precisely what the complaint contains. The motion to dismiss the conspiracy counts is denied.

Defendants Sheriff John Zaruba, Dep. Thomas Weiser, Sgt. Michael Tellone, Det. Joseph DelGiudice, and the Sheriff's Department of DuPage County move to dismiss the claims against them. Defendants argue that the only mention of Sgt. Tellone in the facts section of Mr. Horstman's complaint is an allegation that Sgt. Tellone witnessed the criminal charge against Mr. Horstman, an act that they claim is not actionable. *Jenkins v. Keating*, 147 F.3d 577, 584 (7th Cir. 1998) (holding that plaintiff could not bring a false arrest claim against an officer who only signed a complaint). However, the complaint alleges that Sgt. Tellone falsely witnessed the charge and, together with others, prepared and filed factually false investigation and duty reports to substantiate the false charges. On a motion to dismiss, this is sufficient to state a claim.

Detective DelGiudice argues that the counts against him should be dismissed because the acts alleged are not sufficient to sustain his claim. I agree. The statements and actions Mr. Horstman attributes to Det. DelGiudice in the facts section of the complaint fall well within the legal standards for permissible interrogation, or at least within the realm protected by qualified immunity.

Dep. Weiser makes the premature argument that Mr. Horstman's claims for false arrest, false imprisonment, and malicious prosecution are barred because Dep. Weiser had probable cause to

arrest Mr. Horstman. The existence or non-existence of probable cause at the time of Mr. Horstman's arrest simply cannot be determined from the face of the complaint. Furthermore, his argument in the alternative that qualified immunity protects him from suit is premature. Until the facts are further developed, I cannot determine whether Dep. Weiser's acts were protected by immunity or not.

Sheriff Zaruba argues that the complaint against him in his individual capacity should be dismissed. The mere existence of a supervisory relationship to an alleged wrongdoer does not support a cause of action against a supervisor under § 1983, and Mr. Horstman has not pleaded that Sheriff Zaruba had any direct involvement in or even knowledge of the allegedly unconstitutional experiences suffered by Mr. Horstman. He has not pled an individual claim against Sheriff Zaruba.

Sheriff Zaruba also argues that the complaint against him in his official capacity should be dismissed since neither a municipality nor its agents in their official capacities may be held liable under § 1983 unless one of its official policies or customs caused plaintiff's injuries. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). He argues that the complaint against him should be dismissed because Mr. Horstman failed to allege more than one incident in support of his contention that his injuries resulted from a departmental policy. Sheriff Zaruba cites a number

of cases for the proposition that a plaintiff must allege several specific events in order to properly allege a § 1983 claim under *Monell*. All but one of these cases, however, are inapposite. Several of them concern the evidence a plaintiff must provide in order to withstand a motion for summary judgment or succeed at trial, not the allegations a plaintiff must make in order to withstand a motion to dismiss for failure to state a claim, which is the question currently before me. *See, e.g., Roach v. City of Evansville*, 111 F.3d 544, 548 (7th Cir. 1997). Others are uninformative as they predate *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993), the definitive case abolishing heightened pleading standards in civil rights cases. *See, e.g., O'Connor v. City of Chicago*, No. 87 C 10945, 1989 U.S. Dist. LEXIS 1726 (N.D. Ill. Feb 21, 1989) (Grady, J.).

The one case that does appear to support Sheriff Zaruba's contention that Mr. Horstman has failed to state a *Monell* claim is *Gustafson v. Jones*, 117 F.3d 1015 (7th Cir. 1997). In *Gustafson*, the court upheld the dismissal of a claim against three high-ranking police officers in their official capacities. The court reasoned that the plaintiffs' general allegation that the Milwaukee Police Department engaged in an ongoing practice of unconstitutional discriminatory transfer was not sufficient to state a claim. *Id.* at 1022. The holding in *Gustafson* was based on

18

the notion that "*Leatherman* is not the last word" on pleading standards in civil rights cases because the Supreme Court "addressed this kind of claim in *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397 (1997)." *Id.* But *Brown* reached the Supreme Court following a jury trial and dealt exclusively with the evidence a plaintiff must produce in order to prevail on the facts. The opinion does not address the issue of pleading standards at all, and contains no reference to *Leatherman*. Furthermore, the Seventh Circuit recently re-affirmed the essential holding of *Leatherman*, stating that a complaint need contain only an allegation of an express unconstitutional policy, a widespread practice so well established that it constitutes law, or that the person injuring plaintiff held final policymaking authority. Here plaintiff alleges the existence of an actual policy. *McCormick v. City of Chicago*, 230 F.3d 319, 323-24 (7th Cir. 2000). In light of *McCormick*, I do not find *Gustafson* controlling here. Mr. Horstman has stated a claim against Sheriff Zaruba in his official capacity.

Next, defendants argue that the state-law claims must be dismissed under the Illinois Tort Immunity Act, 745 ILCS 10/2-202, which states that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." Willful and wanton conduct is defined as behavior that "shows an actual or deliberate intention to cause harm or which, if not intentional,

shows an utter indifference to or conscious disregard for the safety of others or their property." *Smith v. City of Chicago*, 242 F.3d 737, 744 (7th Cir. 2001). Mr. Horstman alleges that the defendants acted with deliberate malice as part of a nefarious plot to deprive gun owners of their rights, which, if true, might justify a holding that the defendants' behavior was willful and wanton. The factual record must be further developed before I can evaluate the veracity of this claim. Taking the plaintiff's allegations as true, I find that the Illinois Tort Immunity Act does not bar Mr. Horstman's state law claims against defendants Weiser, Birkett, Brennan and Tellone. *See McGovern v. Pacetti*, No. 01 C 3722, 2002 U.S. Dist. LEXIS 1420, at *10 (N.D. Ill. Jan. 29, 2002) (Pallmeyer, J.) (denying defendant police officer's motion to dismiss state law assault and battery claims on the ground that more facts were necessary in order to determine the applicability of 745 ILCS 10/2-202).

The DuPage defendants argue that Count I should be dismissed because "the existence of a tort claim under state law knocks out any constitutional theory of malicious prosecution." *Newsome v. McCabe*, 256 F. 3d 747, 750 (7th Cir. 2001). Mr. Horstman himself pleads that he has a state-law claim for malicious prosecution in Count VII of the complaint. However, Count I cannot be characterized as a malicious prosecution claim; it alleges deprivation of civil rights under § 1983, including false

imprisonment, loss of liberty, and other torts. Thus, the fact that Mr. Horstman must base his malicious prosecution claim on state law does not justify dismissal of Count I.

The Sheriff's Department defendants move to dismiss the battery count, Count XI, on the ground that only Dep. Weiser touched Mr. Horstman. "A person commits battery if he intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature." 720 ILCS 5/12-3(a). Mr. Horstman does not allege that any defendant other than Dep. Weiser touched him, so the battery count is dismissed as to all defendants except Dep. Weiser. Dep. Weiser's states that his touching of Mr. Horstman was not battery because it was legally justified touching during the course of a legal arrest. As discussed above, however, the question of whether Mr. Horstman's arrest was justified has yet to be settled. Thus, Count XI is not dismissed with respect to Dep. Weiser.

Like the state's attorney defendants, the sheriff's department defendants argue that Mr. Horstman has failed to adequately plead conspiracy. The analysis of Count II's sufficiency in section V, above, applies equally to the defendants about whom Mr. Horstman has otherwise stated a claim.[2] Mr. Horstman has adequately pleaded

---

[2] Since the facts as alleged do not state a claim against Sheriff Zaruba in his individual capacity or Det. DelGuidice, and they are not otherwise tied to the alleged conspiracy, this claim is also dismissed as to them. *Walker v. Thompson*, 288 F.3d at 1008.

Count II as well as Count XIV, the state-law conspiracy claim. The motion to dismiss the conspiracy claims is denied.

## VII.

The defendants point out two flaws in the complaint that necessitate dismissal of Counts VIII, XII, and XIII as to all defendants. First, in order to sustain a claim of intentional infliction of emotional distress, a plaintiff must plead that the defendants' conduct was "truly extreme and outrageous, beyond all possible bounds of decency." *McDade v. City of Chicago*, No. 01 C 9300, 2003 U.S. Dist. LEXIS 9117, at *8 (N.D. Ill. May 30, 2003) (Bucklo, J.). Mr. Horstman makes no such allegation and pleads no facts that support such an inference. Thus, the motion to dismiss Count VIII is granted as to all defendants.

Second, public officials enjoy absolute immunity from suit for defamation and "kindred torts" arising from statements made in the course of their official duties. *Harris v. News-Sun*, 646 N.E.2d 8, 11 (Ill. App. Ct. 1995). Mr. Horstman does not allege that the defendants acted outside the scope of their duties, and he does not dispute their claim that any statements made about Mr. Horstman were made in the course of doing their jobs. The motions to dismiss Counts XII and XIII are granted as to all defendants.

22

VIII.

I grant the motions to dismiss all counts against State's Attorney Devine, DuPage County, Det. DelGiudice and Sheriff Zaruba. As to the remaining defendants, the motions to dismiss Counts I, II, VI, VII, IX, and XIV are denied. The motion to dismiss Count XI is denied as to Dep. Weiser, but granted as to the other defendants. The motions to dismiss counts III, IV, V, VIII, X, XII, XIII, XV, XVI, and XVII are granted.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated:     September 26, 2003